FILED

2025 Aug-20  AM 09:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| LAURA BLACKLIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  5:24-cv-00740-HNJ |
| | ) | |
| CATHLEEN ANDERSON, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Laura Blacklidge filed this case on June 7, 2024.  (Doc. 1).  On August 19, 2024, she filed a Second Amended Complaint which asserts claims for breach of trust, breach of fiduciary duties, breach of duty to inform and report, accounting, and removal of trustee and termination of trust against Defendants Cathleen (Cathy) Anderson, individually, and Cathleen (Cathy) Anderson as Trustee for the Residuary Trust Under Will of Charles W. Anderson (Residuary Trust), as Trustee for the Grandchildren's Trust under Will of Charles W. Anderson (Grandchildren's Trust), and as Trustee of the Laura Anderson Blacklidge Trust (Laura's Trust).  (Doc. 18).  The court will refer to Defendants collectively as "Anderson."  All claims arise from Anderson's alleged mishandling of Trusts that named Blacklidge as a beneficiary.[1]

---

[1] Blacklidge asserts the existence of federal subject matter jurisdiction based upon diversity, as she resides in North Carolina, all Defendants constitute citizens of Alabama, and the amount in controversy exceeds $75,000.  (Doc. 18, ¶¶ 1, 3-5); *see* 28 U.S.C. 1332(a)(1).

On September 10, 2024, Anderson moved to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 21). As discussed more fully herein, Blacklidge's Second Amended Complaint does not constitute an impermissible shotgun pleading, and it does not contain inconsistent allegations that warrant dismissal. In addition, Counts One through Five of the Second Amended Complaint state viable claims for relief. Accordingly, the court **WILL DENY** Anderson's motion to dismiss.

## STANDARD FOR ASSESSING A MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Federal Rule of Civil Procedure 8, governing pleading, calls for a short and plain statement of a claim, which, if established, entitles the pleader to relief. *See Dees v. Lamar*, No. 2:20-cv-1326-LSC-GMB, 2020 WL 13750276, at *2 (N.D. Ala. Nov. 30, 2020) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (noting Rule 8(a)(2) requires a plaintiff to "give the defendant fair notice of what the . . .claim is and the grounds upon which it rests" (ellipsis in original)). Relatedly, Federal Rule of Civil Procedure Rule 12(b)(6) permits a court to dismiss a complaint if it fails to state a claim for which relief may be granted.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court revisited the applicable standard governing Rule 12(b)(6) motions to dismiss. First, courts must take note of the elements a plaintiff must plead to state the applicable claims at issue. *Id.* at 675.

After establishing the elements of the claim at issue, the court identifies all well-pleaded, non-conclusory factual allegations in the complaint and assumes their veracity. *Id.* at 679. Well-pleaded factual allegations do not encompass mere "'labels and conclusions,'" legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action. *Id.* at 678 (citations omitted). In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in the plaintiff's favor. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Third, a court assesses the complaint's well-pleaded allegations to determine if they state a plausible cause of action based upon the identified claim's elements. *Iqbal*, 556 U.S. at 678. Plausibility ensues "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the analysis involves a context-specific task requiring a court "to draw on its judicial experience and common sense." *Id.* at 678, 679 (citations omitted). The plausibility standard does not equate to a "'probability requirement,'" yet it requires more than a "mere possibility of misconduct" or factual statements that are "'merely consistent with a defendant's liability.'" *Id.* (citations omitted).

**ALLEGATIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

Charles W. Anderson, Blacklidge's grandfather, passed away in 2003. He established several trusts in his Last Will and Testament, including the Residuary Trust

and the Grandchildren's Trust.  (Doc. 18, ¶ 6).  Cathy Anderson, Mr. Anderson's spouse

at the time of his death, serves as the sole Trustee of these Trusts.  (*Id.* ¶¶ 7-8).[2]  "At

some point during Anderson's trusteeship, the Laura Anderson Blacklidge Trust

[("Laura's Trust")] was created."  (*Id.* ¶ 6; *see also id.* ¶ 3).[3]

The Trusts all name Blacklidge as a beneficiary.  (*Id.* ¶ 8).  By establishing the

Trusts,

> Mr. Anderson wanted to make sure that his six (6) grandchildren were to
> receive an inheritance with the option for the Trusts to terminate upon
> their attaining the age of thirty-five years old.  Mr. Anderson also designed
> the Trusts such that each grandchild would have their individual trusts –
> receiving a pro rata share of his assets as provided in his Last Will and
> Testament.

(*Id.* ¶ 9).  The Trusts also required the Trustee to distribute Trust income to beneficiaries

who have reached age 25.  (Doc. 18, ¶ 20).

In March of 2014, the Trustee's attorney informed Blacklidge that the value of

her Trusts exceeded $2,000,000, and the $2,000,000 figure represented a "'conservative

estimate.'"  (*Id.* ¶ 10).  Blacklidge also ascertained the Trust agreements entitled her to

---

[2] The Second Amended Complaint alleges Mr. Anderson named his spouse as Co-Trustee, but the other Co-Trustees have either died or resigned.  Therefore, only Anderson remains as Trustee.  (Doc. 18, ¶ 7).

[3] Anderson's motion to dismiss states she "is unaware of any such trust and is unsure what Plaintiff is referring to," as "[t]he 'Residuary Trust' and the 'Grandchildren's Trust' are the only two existing trusts of which Anderson is aware … she is [the] Trustee and Plaintiff is a beneficiary."  (Doc. 21, at 1 n.1).  Even so, "for purposes of [the motion to dismiss]," Anderson accepts as true "the alleged existence of 'Laura's Trust.'"  (*Id.*).

regular, periodic income distributions from the Trusts. The Trusts' ownership in AFT One, LLC, provided part of the income for the Trust distributions. (*Id.* ¶ 11).

At some unspecified point, Anderson "began purchasing the other beneficiaries' trusts interest in AFT One, LLC, for undisclosed amounts." Blacklidge "believes that these purchases were to [Blacklidge's] detriment because [they] caused [her] Trusts' assets to diminish." (*Id.* ¶ 12).

In early 2023, Anderson informed Blacklidge about a meeting regarding the Trusts scheduled for the following day. Blacklidge requested that Anderson provide her a copy of the "Trusts agreement" during the meeting, and Anderson agreed. (*Id.* ¶ 13). During the scheduled meeting, Anderson provided Blacklidge with a sealed envelope, yet she instructed Blacklidge not to open the envelope during the meeting. Blacklidge anticipated the envelope would contain the requested copies of the "Trusts agreements," but Blacklidge did not receive those documents. Contrary to Blacklidge's expectation that the meeting would address the Trusts, the meeting actually addressed AFT One, LLC. (*Id.* ¶ 14). When Blacklidge later opened the envelope, she found it contained "old paperwork related to the prior counsel's interpretation of Mr. Anderson's estate planning documents." (Doc. 18, ¶ 15). Blacklidge again solicited Anderson to provide her a copy of the "Trusts agreement," yet as of the date of the Second Amended Complaint, Anderson had provided no such document. (*Id.*).

In a letter dated February 2, 2023, Anderson informed Blacklidge that

Blacklidge's Trusts "had taken a decline due to the 'volatile year in the stock market' and that she should expect to receive a smaller distribution." (*Id.* ¶ 16). In a letter dated February 15, 2023, Anderson informed Blacklidge the value of Mr. Anderson's estate equaled $12,363,408, and Blacklidge's Trusts' pro rata share of the estate equaled $1,144,852. (*Id.* ¶ 17).[4] Based upon this estimated value, Anderson justified paying

---

[4] Anderson attached a copy of the February 15 letter to her motion to dismiss. (Doc. 21-1). Anderson addressed the letter to CPA Scott Hand and attorney Coby Boswell, and she attached to the letter a copy of Charles Anderson's Last Will and Testament. However, the court may not consider matters outside the pleadings without converting a motion to dismiss into a summary judgment motion and providing the parties an opportunity to submit pertinent material. Fed. R. Civ. P. 12(d). An exception exists if "(1) 'the plaintiff refers to certain documents in the complaint,' (2) those documents are 'central to the plaintiff's claim,' and (3) the documents' contents are undisputed." *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Cir. 2023) (citations omitted).

Blacklidge "does not challenge the authenticity of the letter itself," yet she does challenge "discrepancies in what was attached to the letter." (Doc. 26, at 12).

> When Anderson filed her first Motion to Dismiss . . ., Anderson filed the same letter without the additional enclosures. However, upon objection by Blacklidge regarding the incompleteness of the Exhibit, when Anderson filed her Second Motion to Dismiss, she again filed a copy of the same letter, but this time included a copy of the Will with it. However, she failed again. The letter references *two* enclosures but again Anderson fails to provide a complete copy of the letter and its enclosures, proving the unreliability of Anderson's assertion that this letter dismisses Blacklidge's claim. . . .

> In the version of the letter that Blacklidge received, she only received a copy of the interpretation of the Will, not a copy of the Will. For these reasons, Blacklidge challenges the authenticity of the completeness of Anderson's Exhibit and reliance thereof to dispute Blackledge's allegation that she never received a copy of the Trust terms.

(*Id.* at 12-13 (emphasis in original)).

Accordingly, the court will consider the contents of the February 15, 2023, letter, but it will not consider the substance of its disputed attachments. Even so, the court need not strike the disputed attachments, as Blacklidge suggests. *See Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010) (citations omitted) ("A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings. According to case law,

Blacklidge a 2023 income distribution that equaled half the value of the previous year's distribution.  (*Id.* ¶ 18).

In an October 23, 2023, email to Anderson, Blacklidge requested "information about the Grandchildren's trust, specifically about her 9.26% ownership in AFT One, LLC and why the value of the Grandchildren's trust had declined and why her income distribution was considerably less than previous years."  (*Id.* ¶ 19).

> By December 2023, [Anderson] sent Blacklidge a purchase agreement for Laura's Trust's 9.26% interest in AFT One, LLC, to be purchased by [Anderson], individually, for $685,784 ($74,058.80 per 1% interest) to be paid over 12 years.  However, the purchase would also include a repayment of certain debt and expenses in the amount of $39,550 which would be deducted from the purchase price – making the total amount paid to Blacklidge $646,234.

> A closer review of the purchase documents demonstrates that [Anderson] was on all sides of the deal.  [Anderson] was not only the individual purchaser of Laura's Trust interests, but she was also the managing member of AFT One, LLC., of which Laura's Trust purportedly owns over 9% interests, as well as [Anderson] serving as the trustee of Laura's Trust.

> In all of these controlling roles, [Anderson] never offered Blacklidge any information or explanation as to why [Anderson's] purchase price was significantly less than the over $1 million value that [Anderson] had provided to Blacklidge, and others, just a few months prior in February 2023.

> Instead, [Anderson] demanded that Blacklidge consent to the sale and correct [a] scrivener's error in a promissory note.

---

'not considering' such matters is the functional equivalent of 'excluding' them – there is no more formal step required.").

[Anderson]'s proclamations regarding the value of Blacklidge's Trusts fail to be supported with any backup financial information. Blacklidge, individually and through agents, have [*sic*] repeatedly requested supporting financial information that would demonstrate the value of Blacklidge's Trusts.  However, each request has been met with a denial from [Anderson].

Instead, [Anderson] continues to make blanket declarations regarding the financial stability and health of the Trusts without demonstrating how she arrives at these conclusions.  To date, Blacklidge does not know what assets [the Trusts] are comprised of, including whether [it is] securities[,] investments, real property and/or cash. Moreover, when Blacklidge asked, she was chastised for questioning [Anderson].

[Anderson] has refused to provide Blacklidge with an accounting of all her Trusts, as well as, has failed to provide her with adequate information regarding the proposed sale, the other buyouts, and the Trusts' investments including the value of Blacklidge's Trusts interests in AFT One, LLC, as well as information related to the status of the Grandchildren's Trust and the Residuary Trust.  Additionally, to oppress Blacklidge, [Anderson] continues to withhold Blacklidge's 2024 annual Trust distribution in violation of the terms of the Trusts despite making annual distributions to other beneficiaries in the first quarter of this year.[5]

Blacklidge contends that [Anderson] has caused her Trusts to

---

[5] As recounted, the Second Amended Complaint alleged Anderson did not provide Blacklidge with a trust distribution for 2024.  Blacklidge noted that on the day of filing her response to the motion to dismiss, Anderson "notified Blacklidge's counsel that she was going to distribute Blacklidge's 2024 Trust distribution and credit it against a purported loan owed to Anderson."  (Doc. 26, at 3 n.2). However,

> Blacklidge does not concede that this is correct, nor does she concede or agree that the distribution amount is correct – as she has not been provided with sufficient information to examine the correctness of Anderson's actions.  Therefore, Blacklidge will continue to maintain her claim against Anderson related to her 2024 Trust distribution.

(*Id.*).

diminish in value through [Anderson]'s mismanagement, [Anderson] causing the Trusts to purchase others' interest for amounts that could not be justified by [the] reasonable prudent person's standard, and from her self-dealing. Moreover, upon information and belief, Blacklidge believes that [Anderson] squandered the Trusts' assets, specifically AFT2 and AFT5.[6]

(*Id.* ¶¶ 21-28 (paragraph numbers omitted)).

## DISCUSSION

### I.    The Second Amended Complaint Does Not Constitute an Impermissible Shotgun Pleading.

Anderson asserts the court should dismiss Blacklidge's Second Amended Complaint as an impermissible shotgun pleading. A complaint deemed a shotgun pleading "violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and it instructs that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense" "[i]f doing so would promote clarity." Fed. R. Civ. P. 10(b).

---

[6] The Second Amended Complaint provides no further detail regarding these entities.

"The 'self-evident' purpose of these rules is 'to require the pleader to present his claims discretely and succinctly, so that[] his adversary can discern what he is claiming and frame a responsive pleading.'" *Barmapov*, 986 F.3d at 1324 (alteration in original) (quoting *Weiland*, 792 F.3d at 1320). "These rules were also written for the benefit of the court, which must be able to determine 'which facts support which claims,' 'whether the plaintiff has stated any claims upon which relief can be granted,' and whether evidence introduced at trial is relevant." *Id.* (quoting *Weiland*, 792 F.3d at 1320).

"Shotgun pleadings 'are flatly forbidden by the spirit, if not the letter, of these rules,'" *id.*, because they "'waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts.'" *Id.* (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11ᵗʰ Cir. 2018)). The Eleventh Circuit condemns shotgun pleadings and bears "'little tolerance'" for them. *Id.* (quoting *Vibe Micro*, 878 F.3d at 1295).

The Court has identified four types of shotgun pleadings. *Id.* (citing *Weiland*, 792 F.3d at 1321). The first and most common type contains "multiple counts where each count adopts all allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321 (footnote omitted). The second most common type "is guilty of . . . being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321-22 (footnote

omitted). The third type does not separate "each cause of action or claim for relief" into different counts. *Id.* at 1322-23 (footnote omitted). The final and relatively rare type of shotgun pleading "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323 (footnote omitted).

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* (footnote omitted). "[A] district court that receives a shotgun pleading should strike it and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading." *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020) (citation omitted) (admonishing a district court for not striking a shotgun pleading).

Anderson argues the Second Amended Complaint constitutes the first type of shotgun pleading because each of its five counts "'incorporate[s] by reference' all of the allegations, factual and legal, set forth in the Second Amended Complaint without delineating which facts or allegations apply to each count." (Doc. 21, at 2). However, Anderson inaccurately describes the Second Amended Complaint. Each Count of the Second Amended Complaint incorporates by reference preceding paragraphs 1-28, which comprise Blacklidge's allegations regarding jurisdiction and venue, the parties to

the litigation, and the factual background. (*See* Doc. 18, ¶¶ 1-28, 29, 33, 38, 43, 46). As each count of the Second Amended Complaint does not incorporate all previous counts, it does not constitute the first type of impermissible shotgun pleading. *See Barmapov*, 986 F.3d at 1325 ("Barmapov's second amended complaint does not fall into the first category because although nine of the 19 counts incorporate almost every factual allegation in the complaint, none of them adopts the allegations in the preceding counts."); *Weiland*, 792 F.3d at 1324 ("Weiland's re-alleging of paragraphs 1 through 49 at the beginning of each count looks, at first glance, like the most common type of shotgun pleading. But it is not. . . . The allegations of each count are not rolled into every successive count down the line."); *Burke v. Custom Marine Grp.*, 847 F. App'x 578, 581 (11th Cir. 2021) (citing *Weiland*, 792 at 1324) ("Although each of the counts realleged the generalized allegations, they did not reallege the *preceding counts*. This Court does not categorize complaints as shotgun pleadings where "[t]he allegations of each count are not rolled into every successive count on down the line." (alteration and emphasis in original)).

Anderson has not asserted the Second Amended Complaint constitutes any other type of shotgun pleading, and based upon the undersigned's review the Second Amended Complaint does not fall under any other category of shotgun pleading. Accordingly, the court will not dismiss the Second Amended Complaint on these grounds.

## II.    The Second Amended Complaint Does Not Contain Inconsistent Allegations That Warrant Dismissal.

Anderson also seeks dismissal of the Second Amended Complaint because it purportedly "contains a number of internally contradictory and inconsistent allegations." (Doc. 21, at 4). However, Anderson identifies only two alleged inconsistencies:

> For example, Plaintiff alleges that she has never been provided with a copy of the "Trusts agreement" (doc. 18 at ¶ 15), yet she also purports to assert claims based upon the alleged terms of the Trusts. (*Id.* at ¶ 20, 47, 49). Importantly, Plaintiff alleges that she does not have any idea what assets are held by the Trusts (*Id.* at ¶ 26), yet also alleges that Anderson has "mismanaged" those assets and failed "to invest the Trusts' assets as a reasonabl[y] prudent person." (*Id.* ¶¶ 28, 36). How can Plaintiff plausibly allege that Anderson has mismanaged the assets of the Trusts when she concedes that she has no idea what assets are held by the Trust?

(Doc. 21, at 4 (alteration in original)).

Those allegations do not manifest internal inconsistencies. Blacklidge could know about certain Trust terms without actually viewing any of the Trust documents. Indeed, she alleges "the trustee's counsel" informed her of the value of the Trusts and her entitlement to "regular, periodic income distributions from the Trusts." (Doc. 18, ¶¶ 10-11). She also "has received various documents and communications from [Anderson]" regarding the Trusts. (*Id.* ¶ 8). Moreover, allegedly without the benefit of reviewing the Trust documents, Blacklidge alleges she knows that her grandfather established the Trusts in his will; Anderson currently serves as the sole Trustee, though

other Co-Trustees formerly served; her grandfather intended the Trusts to terminate when the beneficiaries reached age 35; and her grandfather wanted each designated grandchild to receive a pro-rata share of the Trust assets. (*Id.* ¶¶ 6-7, 9).

In addition, Blacklidge could plausibly suspect Anderson's alleged mismanagement of the Trusts without knowing all assets that comprise each Trust. Blacklidge alleges Anderson purchased other beneficiaries' Trust interests to her detriment, as the value of the Trusts diminished significantly, and Anderson self-interestedly devalued the Trusts. (*Id.* ¶¶ 10, 12, 16-18, 21-23). She alleges Anderson has refused to provide her with central information about the Trusts, further supporting her allegations of mismanagement and justifying her lack of knowledge about certain details regarding the Trusts. (*Id.* ¶¶ 13-15, 19, 23, 25-27).

As such, Blacklidge's allegations do not manifest the types of inconsistencies presented in the cases Anderson cites. (*See* Doc. 21, at 4-5). Moreover, rather than announcing a blanket rule that any factual inconsistencies in a pleading warrant automatic dismissal the decisions relied upon by Anderson variably address exceptions to the general rule that courts must assume the veracity of a complaint's allegations when adjudicating a motion to dismiss. *See, e.g., Williams v. Gordy,* No. 5:17-cv-01648-LSC-JEO, 2018 WL 2994401, at *8 (N.D. Ala. Apr. 19, 2018) ("[C]ourts need not accept as true 'internally inconsistent factual claims.'"); *Shack v. Jenkins,* No. 2:16-cv-01626-AKK-TMP, 2017 WL 1017133, at *2 (N.D. Ala. Feb. 23, 2017) (court need not accept

as true the allegations of an amended complaint that contradicted the allegations of the original complaint); *Johnson v. Skoog*, No. 5:14-cv-01217-RDP-JHE, 2015 WL 9948265, at *3 (N.D. Ala. Oct. 23, 2015) (court need not accept as true inconsistent allegations in the same pleading). Or, they address circumstances in which contradictory allegations demonstrate a claim is frivolous, warranting dismissal pursuant to 28 U.S.C. § 1915.[7] *See Battle v. Cent. State Hosp.*, 898 F.2d 126, 130 n.3 (11th Cir. 1990) (applying a previous version of § 1915 to discern "allegations that are contradicted by other allegations in the complaint" may also constitute grounds for dismissal of a claim as "clearly baseless").[8] Neither of those situations presents here.

---

[7] Pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a case as frivolous, regardless of the payment of a filing fee.

[8] Anderson also cites non-binding, out-of-circuit authority holding that contradictory allegations in a pleading rendered a claim implausible on its face, thereby warranting dismissal for failure to satisfy the pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Mora v. Univ. of Texas Sw. Med. Ctr.*, 469 F. App'x 295, 299 (5th Cir. 2012) (employee's allegations that employer retaliated against her by terminating her employment after she complained about employer's unwillingness to accommodate her disability contradicted other facts in the complaint, thereby warranting dismissal for implausibility, as "[t]he complaint sets forth no facts suggesting that [the employee] ever complained about any 'unwillingness to accommodate her disability,'" and the employee "only complained *after* she was fired") (emphasis in original); *Colesanti v. Becton Dickinson*, No. CV-18-491-WES, 2019 WL 4043957, at *9 (D.R.I. July 19, 2019), *report and recommendation adopted sub nom. Colesanti v. Dickinson*, No. CV-18-491-WES, 2019 WL 4039529 (D.R.I. Aug. 27, 2019) (allegation that law firm "allowed" a patent holder to retain an overpayment "as part of a fraud to cover up that it had been made" manifested as "utterly implausible" when documents attached to the complaint demonstrated the law firm promptly revealed the overpayment to the patent holder, obtained legal advice about how to "go after" the patent holder, received advice that it may lose if it attempted to litigate the issue, concluded no compliance-based reason existed to sue the patent holder for a recoupment, planned a telephonic meeting with the patent holder regarding its demand for recoupment, and, no additional facts supported the allegation); *Trevino v. City of Pleasanton*, No. 5:18-CV-00688-DAE-RBF, 2019 WL 1793360, at *5 (W.D. Tex. Apr. 23, 2019), *report and recommendation adopted*, No. 5:18-CV-688-DAE, 2019 WL 13318340 (W.D. Tex. May 24, 2019) (allegations "that both racial animus and First Amendment retaliation motivated Defendants'

Accordingly, no inconsistent allegations in the Second Amended Complaint warrant dismissal under Rule 12(b)(6).

### III. Blacklidge States Viable Claims for Breach of Trust and Breach of Fiduciary Duty in Counts One and Two of the Second Amended Complaint.

In Count One of the Second Amended Complaint, Blacklidge seeks to hold Anderson liable for breach of trust, and in Count Two, she seeks to hold her liable for breach of fiduciary duty. As the two claims bear similarity under Alabama law, the court will simultaneously assess the sufficiency of both claims.[9]

Under Alabama law, "the elements of a breach-of-fiduciary-duty claim are the existence of a fiduciary duty, a breach of that duty, and damage suffered as a result of that breach." *Aliant Bank, a Div. of USAmeribank v. Four Star Invs., Inc.*, 244 So. 3d 896, 907 (Ala. 2017) (citing *Regions Bank v. Lowrey*, 101 So.3d 210, 219 (Ala. 2012)). Evaluating the existence of a duty represents a question of law for the court. *Id.* at 908 (citing *Ex parte BASF Constr. Chems., LLC*, 153 So.3d 793, 801-02 (Ala. 2013)).

---

allegedly wrongful actions" directly contradicted other allegations that suggested other motivations for the treatment, rendering the complaint "insufficient to state a plausible claim for relief" under *Iqbal*). However, as discussed in the text, Blacklidge's Second Amended Complaint does not contain inherently inconsistent allegations that would render her claims implausible.

[9] As another judge within this district has observed, "[a] breach of trust is a type of breach of fiduciary duty." *Rudd v. Branch Banking & Tr. Co.*, No. 2:13-CV-02016-SGC, 2024 WL 3656740, at *2 n.8 (N.D. Ala. Aug. 2, 2024), *aff'd sub nom. Rudd v. Branch Banking & Tr. Co., Co-trustee of Joy Goodwin Adams Irrevocable Tr. dated 01/02/87*, No. 24-12821, 2025 WL 1672160 (11th Cir. June 13, 2025) (citing RESTATEMENT (THIRD) OF TRUSTS § 93 (2012); *In Int. of Delluomo v. Cedarblade*, 328 P.3d 291, 293 (Colo. App. 2014)).

A trustee owes a fiduciary duty to trust beneficiaries. *Lowrey*, 101 So. 3d at 219 ("Because Regions served as sole trustee of the Lowrey Trust, a fiduciary duty existed between the parties."). Thus, pursuant to Alabama law, "[a] violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." Ala. Code § 19-3B-1001(a).[10]

---

[10] As a remedy for any breach of trust, the court may:

    (1) compel the trustee to perform the trustee's duties;

    (2) enjoin the trustee from committing a breach of trust;

    (3) compel the trustee to redress a breach of trust by paying money, restoring property, or other means;

    (4) order a trustee to account;

    (5) appoint a special fiduciary to take possession of the trust property and administer the trust;

    (6) suspend the trustee;

    (7) remove the trustee as provided in Section 19-3B-706;

    (8) reduce or deny compensation to the trustee;

    (9) subject to Section 19-3B-1012, void an act of the trustee, impose a lien or a constructive trust on trust property, or trace trust property wrongfully disposed of and recover the property or its proceeds; or

    (10) order any other appropriate relief.

Ala. Code § 19-3B-1001(b).

    The court also may hold a trustee liable to the affected beneficiaries for

(1) the greater of:

        (i) the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred; or

The Alabama Uniform Trust Code codifies several, specific duties a trustee owes to beneficiaries. Those duties include the following:

- The "duty of a trustee to act in good faith and in accordance with the terms and purposes of the trust and the interest of the beneficiaries . . . ."  Ala. Code § 19-3B-105(b)(2); *see also* Ala. Code § 19-3B-801 ("the trustee shall administer the trust in good faith, in accordance with the terms of the trust and its purposes and the interests of the beneficiaries").

- A "trustee shall administer the trust solely in the interests of the beneficiaries." Ala. Code § 19-3B-802(a).

- "If a trust has two or more beneficiaries, then the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests and the purposes of the trust."  Ala. Code § 19-3B-803.

- "A trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill,

---

(ii) the profit the trustee made by reason of the breach;

(2) any measure of damage otherwise provided by law.

Ala. Code § 19-3B-1002(a).

and caution." Ala. Code § 19-3B-804.

- A "trustee who invests and manages trust assets owes a duty to the beneficiaries of the trust to comply with the prudent investor rule," except that the rule "may be expanded, restricted, eliminated, or otherwise altered by the terms of a trust. A trustee is not liable to a beneficiary to the extent that the trustee acted in reasonable reliance on the terms of the trust." Ala. Code § 19-3B-901.

As the Alabama Uniform Trust Code provides, the "common law of trusts and principles of equity supplement" the foregoing provisions to the extent they comport with Alabama law. Ala. Code § 19-3B-106. Those principles of equity include provisions "articulated in the Restatement of Trusts, Restatement (Third) of Property: Wills and Other Donative Transfers, and the Restatement of Restitution," and supplementation also derives from "the Code's Comments to each statutory provision, which "may be relied on as a guide for interpretation." Ala. Code § 19-3B-106 cmt.

Furthermore, the Alabama Supreme Court has summarized the duties a trustee owes to a trust:

> A trustee's first duty as a fiduciary is to act in all things wholly for the benefit of the trust. *See, e.g., First Alabama Bank of Montgomery, N.A. v. Martin,* 425 So. 2d 415 (Ala. 1982); *Birmingham Trust Nat'l Bank v. Henley,* 371 So. 2d 883 (Ala. 1979). A trustee owes the beneficiaries of a trust the duty of loyalty, which requires the trustee to preserve trust assets and to administer the trust solely in the interest of the beneficiaries. *Id.* A trustee is under a duty to the beneficiaries to "'exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property.'" *First Alabama Bank of Huntsville, N.A. v. Spragins,* 515 So. 2d

19

962, 964 (Ala. 1987) (quoting *Restatement (Second) of Trusts* § 174 (1959)); *Jones v. Ellis,* 551 So. 2d 396, 402 (1989). *See* § 19-3-120.2(a), Ala. Code 1975 (setting out the standards for fiduciary investment and management of trusts).

*Lowrey*, 101 So. 3d at 219.

Based upon the foregoing applicable legal principles, Blacklidge sufficiently alleged Anderson owed her a fiduciary duty by stating Anderson served as Trustee of the Trusts. *See id.*

Furthermore, Blacklidge also sufficiently alleged Anderson breached her fiduciary duty. The Second Amended Complaint includes the following factual allegations, which implicate breaches of duty owed by trustees to beneficiaries pursuant to principles declared in the Restatement (Third) of Trusts:

- Anderson purchased other beneficiaries' interests in AFT One LLC, for undisclosed amounts, thereby diminishing the value of Blacklidge's Trust shares. (Doc. 18, ¶¶ 12, 28). *See* RESTATEMENT (THIRD) OF TRUSTS § 78 cmt. a (A.L.I. 2007) ("With limited exceptions . . ., the rule of Subsection (2) [regarding transactions that involve self-dealing or otherwise create a conflict between the trustee's fiduciary duties and personal interests] strictly prohibits the trustee from entering into transactions involving the trust property . . . .); *id.* at § 78 cmt. B ("A trustee, therefore, commits a breach of trust by purchasing trust property, even as the highest bidder at a public auction;

otherwise the possibility of purchase by the trustee would create a temptation for the exercise of less than the trustee's best efforts and business judgment on behalf of the trust to determine whether sale is appropriate and to obtain the most favorable price and terms from others for the trust property."); *id.* at § 78 cmt. d (Pursuant to certain exceptions, "the duty of loyalty prohibits a trustee from engaging on behalf of the trust in transactions with the trustee personally. Thus, it is a breach of trust for the trustee personally to buy property held in the trust . . . .").

- Anderson failed to provide Blacklidge with Trust documents. (Doc. 18, ¶ 15). *See* RESTATEMENT (THIRD) OF TRUSTS § 82(1)(c) (A.L.I. 2007) (A "trustee has a duty: . . . to keep fairly representative beneficiaries reasonably informed of changes involving the trusteeship and about other significant developments concerning the trust and its administration, particularly material information needed by beneficiaries for the protection of their interests."); *id.* at § 82(2) (A "trustee also ordinarily has a duty promptly to respond to the request of any beneficiary for information concerning the trust and its administration, and to permit beneficiaries on a reasonable basis to inspect trust documents, records, and property holdings.").

- Anderson provided Blacklidge a decreased Trust distribution for 2023. (Doc. 18, ¶¶ 16-18). *See* RESTATEMENT (THIRD) OF TRUSTS § 92 cmt. a (A.L.I. 2007)

21

("[W]ith the trust's investment objectives in mind, the trustee must review the original investments and, if and as necessary, formulate a plan for restructuring the portfolio to achieve a suitable level of risk and expected return with appropriate degrees of diversification and income productivity.").

- Anderson offered to purchase Laura's Trust's interest in AFT One, LLC, for a lower amount than Anderson had previously valued Laura's Trust's interests. (Doc. 18, ¶¶ 21, 23). *See* RESTATEMENT (THIRD) OF TRUSTS § 78(3) (A.L.I. 2007) ("Whether acting in a fiduciary or personal capacity, a trustee has a duty in dealing with a beneficiary to deal fairly and to communicate to the beneficiary all material facts the trustee knows or should know in connection with the matter.").

- In that proposed transaction, Anderson acted as purchaser, managing member of AFT One, LLC, and Trustee, thereby demonstrating conflicts of interest. (Doc. 18, ¶ 22). *See* RESTATEMENT (THIRD) OF TRUSTS § 78(2) (A.L.I. 2007) ("Except in discrete circumstances, the trustee is strictly prohibited from engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests.").

- Anderson denied Blacklidge's requests for information about the Trusts. (Doc. 18, ¶¶ 25-26). *See* RESTATEMENT (THIRD) OF TRUSTS § 82(2) (A.L.I.

2007) (A "trustee also ordinarily has a duty promptly to respond to the request of any beneficiary for information concerning the trust and its administration, and to permit beneficiaries on a reasonable basis to inspect trust documents, records, and property holdings.").

- Anderson wrongfully withheld Blacklidge's 2024 Trust distribution. (Doc. 18, ¶ 27). *See* RESTATEMENT (THIRD) OF TRUSTS § 97 cmt. f (A.L.I. 2012) ("Fiduciary abuse may result if the trustee brings unwarranted pressure to bear on the beneficiary, for example, by threatening to withhold a distribution to which the beneficiary is entitled unless the beneficiary executes a release.").

- Anderson mismanaged the Trusts, causing them to diminish in value. (Doc. 18, ¶ 28). *See* RESTATEMENT (THIRD) OF TRUSTS § 77 (A.L.I. 2007) ("(1) The trustee has a duty to administer the trust as a prudent person would, in light of the purposes, terms, and other circumstances of the trust. (2) The duty of prudence requires the exercise of reasonable care, skill, and caution."); *id.* at cmt. (b)(1) ("Other considerations and circumstances (at some risk of redundancy) that are likely to be important to prudent administration of a trust include: the expected returns (including both income and capital elements) or other benefits of various courses of action that might be pursued, plus their anticipated tax and cost consequences . . . .").

- Anderson squandered the Trust assets. (Doc. 18, ¶ 28). *See* RESTATEMENT

23

(THIRD) OF TRUSTS § 77 (A.L.I. 2007) ("(1) The trustee has a duty to administer the trust as a prudent person would, in light of the purposes, terms, and other circumstances of the trust. (2) The duty of prudence requires the exercise of reasonable care, skill, and caution."); *id.* at cmt. (b)(1) ("Other considerations and circumstances (at some risk of redundancy) that are likely to be important to prudent administration of a trust include: the expected returns (including both income and capital elements) or other benefits of various courses of action that might be pursued, plus their anticipated tax and cost consequences . . . .").

In Count One, Blacklidge alleges Anderson bears liability to her and her Trusts for the following breaches of trust:

a.   Failure to administer the trust in the best interests of Plaintiff;

b.   Conflicting interest transaction voidable under Alabama Code § 19-3B-802(c)[*sic*: (b)];

c.   Insufficient consideration and without independent valuation of Plaintiff's Trust interest in AFT One, LLC, to further the personal interests of Defendant [Anderson] and increase her own controlling interests;

d.   Failure to pay Plaintiff her distribution as required by the Trusts.

(*Id.* ¶ 31).

Count Two alleges Anderson, as Trustee of Blacklidge's Trusts, constituted a fiduciary who owed Blacklidge a duty of loyalty requiring her "to preserve trust assets

24

and to administer the trust solely in the interest of the beneficiaries." (*Id.* ¶¶ 34-35).

Blacklidge alleges Anderson breached her duty of loyalty by her:

    a.    Failure to administer the Trust in the best interests of [the] beneficiary;

    b.    Failure to administer the Trust without a conflict of interest;

    c.    Failure to properly manage Plaintiff's Trust assets;

    d.    Failure to invest the Trust's assets as a reasonabl[y] prudent person; and

    e.    Failure to provide an accounting and/or inventory of the Trust's assets.

(*Id.* ¶ 36).  As relief for both Counts One and Two, Blacklidge requests "compensatory damages, punitive damages, costs, [and] other damages and relief that [she] may be entitled to." (Doc. 18, at 9-10).

Collectively, the foregoing averments demonstrate Anderson allegedly violated several fiduciary duties to the detriment of the Trusts and their beneficiaries, including Blacklidge.

Blacklidge also sufficiently alleges she suffered damage as a result of Anderson's breaches of duty, as Blacklidge allegedly did not timely receive her 2024 Trust distribution, she contests the amount of that distribution, and the value of her Trusts allegedly substantially diminished.

Anderson argues Blacklidge failed to plead facts demonstrating how Anderson

"purportedly acted contrary to [Blacklidge's] interests or what Anderson should have done differently." (Doc. 21, at 9). She suggests Blacklidge's allegations regarding Anderson's offer to purchase Blacklidge's Trust interests bear no relevance because Blacklidge did not accept the offer. (*Id.*). However, the allegedly low amount of Anderson's offer factually supports Blacklidge's allegations that Anderson depleted the value of the Trusts and acted to further her own self-interest.

Anderson also argues Charles Anderson's Last Will and Testament, which created the Trusts, protects the Trustee from liability to the beneficiaries for any Trustee acts, "except for a willful and intentional misuse or mishandling of Trust assets," (Doc. 21-1, at 16), and, correspondingly, Blacklidge inadequately alleged Anderson engaged in any willful or intentional acts in violation of her Trust duties. As previously discussed in a footnote, the court will not consider the contents of the will as Blacklidge disputes the authenticity of the copy of the will Anderson attached to her motion to dismiss.

However, even if the court considered the will's provisions, the pleading implies willful conduct vis-à-vis the allegations that Blacklidge's Trust interests diminished due to Anderson's purchase of other beneficiaries' interests in AFT One, LLC, in conjunction with the allegations that Anderson withheld information about the Trusts and Blacklidge's 2024 distribution. Moreover, even though Blacklidge never accepted Anderson's offer to purchase Blacklidge's trust interests, Blacklidge alleges Anderson intentionally offered her an unreasonably low price for her Trust interest, plausibly

supporting her allegation of a breach of the duty of loyalty.

To be sure, misuse or mishandling of trust assets by itself may not serve as a basis for liability, notwithstanding the State's prudent investor rule. The prudent investor rule provides that "a trustee who invests and manages trust assets owes a duty to the beneficiaries of the trust to comply with the prudent investor rule," Ala. Code § 19-3B-901(a), which "resembles in this respect the 'reasonable person' rule of tort law" and "is, therefore, objective rather than subjective," *id.* at § 19-3B-901 cmt. However, the statute illuminates that the rule "may be expanded, restricted, eliminated, or otherwise altered by the terms of a trust." *Id.* at § 19-3B-901(b). As noted previously, the putative will establishing the trusts at issue may contain a restriction limiting liability to "willful and intentional misuse and mishandling of trust assets."

Nevertheless, the Restatement (Third) of Trusts elucidates that the prudent investor rule proscribes intentional and willful conduct, not just unreasonable acts, affecting trust assets. More concretely, the rule requires a trustee to "conform to fundamental fiduciary duties of loyalty . . . and impartiality . . . ." RESTATEMENT (THIRD) OF TRUSTS § 90(c)(1) (A.L.I. 2007). *See also id.* at cmt. c ("Under the prudent investor rule, the trustee must act with undivided loyalty and solely in the interests of the beneficiaries. . . . The strict duty of loyalty in the trust law ordinarily prohibits the trustee from investing or managing trust investments in a manner that will give rise to a personal conflict of interest. . . . The prohibition also applies to investing in a manner

that is intended to serve interests other than those of the beneficiaries or the purposes of the settlor."). Breaches of the duties regarding loyalty and impartiality certainly implicate the spectre of "willful and intentional" conduct, and, as discussed previously, the Amended Complaint alleges acts of self-dealing and conflicts of interests in the management of trust assets that incite concerns about loyalty and impartiality. Therefore, notwithstanding the putative will's provisions restricting liability to "willful and intentional" conduct, the Amended Complaint's allegations regarding the management of the assets may satisfy that standard.

For the foregoing reasons, the court concludes Blacklidge has stated viable claims for breach of trust and breach of fiduciary duty in Counts One and Two, respectively, of the Second Amended Complaint.

## IV.   Blacklidge States a Viable Claim for Breach of Duty to Inform and Report in Count Three of the Second Amended Complaint.

In Count Three of the Second Amended Complaint, Blacklidge seeks to hold Anderson liable for breach of the duty to inform and report. Alabama law requires that:

(1) A trustee shall keep the current permissible distributees of income or principal of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests.

(2) Unless unreasonable under the circumstances, a trustee shall promptly respond to a qualified beneficiary's request for information related to the administration of the trust.

Ala. Code § 19-3B-813(a).  A trustee also must "promptly furnish to the beneficiary a copy of the trust instrument" upon the beneficiary's request.  Ala. Code § 19-3B-813(b)(1).  And, a trustee must

> send to the distributees or permissible distributees of trust income or principal, and to other qualified or nonqualified beneficiaries who request it, at least annually, a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets and, if feasible, their respective market values, and, upon termination of the trust, a final report commencing with the date of the most recent annual report through the last transaction of the trust. . . .

Ala. Code § 19-3B-813(c).

Blacklidge alleges Anderson breached these duties by "purposefully and intentionally with[holding] and/or refus[ing] to provide material information relating to the administration of [Blacklidge's] Trusts."  (Doc. 18, ¶ 41).  Moreover, "[b]y her administration of the Trusts, [Anderson allegedly] has frustrated and made it impossible for Plaintiff to protect her interests in the Trusts and to prevent or redress any breaches of trust."  (*Id.* ¶ 42).

As previously discussed, Blacklidge alleged Anderson refused to provide her with a copy of the Trusts agreement (*Id.* ¶ 15), refused to explain the purchase price she offered for Blacklidge's interest in AFT One, LLC (*Id.* ¶ 23), refused to provide "supporting financial information that would demonstrate the value of Blacklidge's Trusts" (*Id.* ¶ 25), refused to disclose what assets comprise the Trusts (*Id.* ¶ 26), refused

to provide an accounting of the Trusts (Doc. 18, ¶ 27), and refused to provide information regarding her purchase of the other Trust interests (*Id.* ¶ 27).[11]  These allegations viably support a cause of action for breach of the duty to inform and report in Count Three of the Second Amended Complaint.

Anderson argues the Second Amended Complaint, filed August 19, 2024, cannot viably assert she failed to provide Blacklidge with a copy of the Trust agreement because Blacklidge's representatives[12] received a February 15, 2023, letter attaching a copy of the grandfather's will, which purportedly contained the Trust agreement.  However, as

---

[11] As relief for Count Three, Blacklidge requests:

> a judgment and order:
>
> 1)    Imposing a constructive trust or lien on all trust property;
>
> 2)    Requiring Defendants to account to the Court for all acts as Trustees of Plaintiff's Trusts, and on such accounting to convey to the Trusts all assets rightfully belonging to the Plaintiff's Trusts Estate;
>
> 3)    Tracing any and all trust property wrongfully disposed of and recover the property or its proceeds;
>
> 4)    Assessing damages pursuant to Alabama Code § 19-3B-1002;
>
> 5)    Taxing costs and fees of and from this proceeding against [Anderson];
>
> 6)    Terminate the Trusts; and
>
> 7)    Awarding Plaintiff such other and further relief as the Court deems just and proper.

(*Id.* at 11).

[12] Anderson addressed the February 15, 2023, letter to Scott Hand, Blacklidge's prior accountant, and Coby Boswell, Blacklidge's family law attorney.  (Doc. 21-1, at 1-2; Doc. 26, at 22-23).

discussed previously, Blacklidge disputes the authenticity and completeness of the attachments to the February 15, 2023, letter, and she maintains the copy of the letter she received did not attach a copy of the will. Therefore, at this juncture the court will not give credence to the copy of the will in the record to adjudicate this issue.

Moreover, the Second Amended Complaint alleges Blacklidge first requested a copy of the Trusts agreement in "early 2023," suggesting the request could have occurred as early as January 1, 2023. (*Id.* ¶ 13). Hence, even if the court deemed the February 15, 2023, letter and attached will as accurate and complete, Anderson potentially sent the letter up to 45 days after Blacklidge's request for a copy of the Trust documents. That delay calls in question whether Anderson "promptly" provided the documents, as Ala. Code § 19-3B-813(b) requires. *See* BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "prompt" as meaning "[d]one quickly, immediately, or at the right time; performed without delay"); "Promptly," Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/promptly, accessed 19 Aug. 2025 (defining "promptly" as meaning "in a prompt manner: without delay: very quickly or immediately").

## V.    Blacklidge States a Viable Claim for an Accounting in Count Four of the Second Amended Complaint.

In Count Four of the Second Amended Complaint, Blacklidge seeks an accounting of the Trusts' assets.

As previously discussed, Alabama law requires a trustee to

> send to the distributees or permissible distributees of trust income or principal, and to other qualified or nonqualified beneficiaries who request it, at least annually, a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets and, if feasible, their respective market values, and, upon termination of the trust, a final report commencing with the date of the most recent annual report through the last transaction of the trust. . . .

Ala. Code § 19-3B-813(c).[13]

Blacklidge alleges that on October 23, 2023, she requested information from Anderson about the declining value of the Grandchildren's Trust and her decreased trust distribution. (Doc. 18, ¶ 19). She also has "repeatedly requested supporting financial information that would demonstrate the value of Blacklidge's Trusts," with no response from Anderson. (*Id.* ¶ 25). She alleges Anderson has refused to demonstrate how she arrives at conclusions regarding the financial stability and health of the Trusts, and Anderson chastised Blacklidge for inquiring about the assets that comprise the

---

[13] Alabama Code § 19-3B-205(a) also provides for a judicial accounting of trust assets:

> A trustee may file an accounting of the trustee's administration of a trust in court at any time and seek a partial or final settlement thereof or, upon petition of an interested party, a court may order a trustee to render an accounting of the trustee's administration of a trust and require a partial or final settlement thereof. Notice of such judicial proceeding shall be provided to the trustee and each beneficiary, or representative thereof pursuant to Article 3, as provided by the applicable rules of civil procedure.

However, Blacklidge proceeds under § 19-3B-813(d), not § 19-3B-205. Anderson states she "will obviously comply with any judicial order directing that such an accounting be provided to the court." (Doc. 21, at 18).

Trusts.  (*Id.* ¶ 26). Blacklidge also alleges

> [Anderson] has refused to provide Blacklidge with an accounting of all her
> Trusts, as well as, has failed to provide her with adequate information
> regarding the proposed sale, the other buyouts, and the Trusts'
> investments including the value of Blacklidge's Trusts interests in AFT
> One, LLC, as well as information related to the status of the
> Grandchildren's Trust and the Residuary Trust.

(*Id.* ¶ 27).  Blacklidge contends she "is entitled to an accounting of the Trust's assets

pursuant to Alabama law," and Anderson "has failed to account for each of the Trust's

assets."  (*Id.* ¶¶ 44-45).

Those allegations viably support a claim for an accounting under Alabama law.

Anderson argues "[t]he Second Amended Complaint fails to allege that Plaintiff

previously requested [provision of] the annual report which is a prerequisite under § 19-

3B-813(c)."  (Doc. 21, at 18).  That argument does not accurately describe Alabama law

on trusts, which follows the Uniform Trust Code.  *See Ladd v. Stockham*, 209 So. 3d 457,

466 (Ala. 2016) ("Alabama adopted the Uniform Trust Code, with some revisions,

effective January 1, 2007.").

> [U]nless the settlor provides otherwise in the terms of the trust, the
> Uniform Trust Code requires the trustee to provide specified
> beneficiaries, at least annually and at the termination of the trust, with
> reports of the trustee's administration of the trust without regard to
> whether the beneficiaries have requested them.

Alan Newman, et al., BOGERT'S THE LAW OF TRUSTS AND TRUSTEES § 963 (May 2025).

"Generally, trustee reports should, at a minimum, inform beneficiaries about the trust's

assets, liabilities, receipts, disbursements, and the trustee's compensation." *Id.*; *see also id.* n.3 ("The Uniform Trust Code uses the word 'report' rather than 'accounting' to describe periodic information a trustee is required to furnish beneficiaries about the trust 'to negate any inference that the report must be prepared in any particular format or with a high degree of formality.'"). Alabama law entitled Blacklidge, as a distributee of trust income, to an annual report from the trustee of her Trusts, i.e., Anderson.

Moreover, even if Alabama law did not require automatic annual reports or accountings of the trust, it undisputedly requires trustees to report at least annually to beneficiaries who request such a report. As alleged, Blacklidge repeatedly beseeched Anderson to provide her with reports about the Trusts, and Anderson repeatedly failed and/or refused to comply.

For the foregoing reasons, Blacklidge has stated a viable cause of action for an accounting of the Trusts in Count Four of the Second Amended Complaint.

## VI.    Blacklidge States a Viable Claim for Removal of Trustee and Termination of Trust in Count Five of the Second Amended Complaint.

In Count Five of the Second Amended Complaint, Blacklidge alleges:

> Plaintiff is informed and believes and therefore alleges that Plaintiff's Trusts provide that the Trustee may distribute all or any portion of Plaintiff's Trusts to Plaintiff at any time.
>
> Defendants have consistently failed to administer Plaintiff's Trusts pursuant to the requirements under the Alabama Code or in the best interests of Plaintiff. Defendants have been unable to administer

Plaintiff's Trusts without engaging in conflicting interest transactions for their own personal interests. Therefore, Defendants, in breach of their fiduciary duty, should be removed as trustee.

Plaintiff is informed and believes that the Trusts document permits the Trustee to terminate at any time upon Plaintiff reaching the age of 35 years old. Plaintiff has satisfied this requirement, regularly manages her own affairs and investments, and believes that the Trusts no longer serve any useful purpose.

(Doc. 18, ¶¶ 47-49 (paragraph numbers omitted)).

Alabama law permits the removal of a trustee as a remedy for breach of trust.

Ala. Code § 19-3B-1001(b)(7) ("To remedy a breach of trust that has occurred, the court may . . . (7) remove the trustee as provided in Section 19-3B-706 . . . .").

(a) The settlor, a co-trustee, or a beneficiary may request the court to remove a trustee, or a trustee may be removed by the court on its own initiative.

(b) The court may remove a trustee if:

(1) the trustee has committed a serious breach of trust;

(2) lack of cooperation among co-trustees substantially impairs the administration of the trust;

(3) because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries; or

(4)     (A) there has been a substantial change of circumstances or removal is requested by all of the qualified beneficiaries;

(B) the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust; and

(C) a suitable co-trustee or successor trustee is available.

Ala. Code § 19-3B-706.

As set forth previously, Blacklidge has viably alleged that Anderson committed breaches of trust and breaches of her fiduciary duty as Trustee. Blacklidge also alleges Anderson has persistently failed to administer the trust effectively, as she has engaged in self-dealing and significantly diminished the value of the trusts. Finally, Blacklidge requests Anderson's removal to further her own best interest, and her allegations viably demonstrate she constitutes the sole beneficiary of at least Laura's Trust.

Accordingly, the foregoing allegations state a viable claim for removal of Anderson as Trustee, and thus, Anderson's contention that Blacklidge pleaded insufficient, conclusory facts vis-à-vis this claim do not warrant dismissal. Moreover, the cases Anderson cites do not persuade the court to reach a different conclusion.

In *Matter of Amason's Est.*, 369 So. 2d 786 (Ala. 1979), the Alabama Supreme Court provided that the "removal of a trustee is such a drastic action that it should be taken only when the estate is actually endangered and intervention is necessary to save trust property." *Id.* at 790 (citing *Ingalls v. Ingalls*, 257 Ala. 521, 59 So. 2d 898 (1952); *Chambers v. Mauldin*, 4 Ala. 477 (1842)). However, in that case the beneficiary seeking removal of a trustee cited a "'change of the residence and living habits and requirements

36

of" the beneficiary, which constituted "grounds . . . insufficient in themselves" for removal of the trusteeship. *Matter of Amason's Est.*, 369 So. 2d at 789-90. The case did not involve the type of breaches of trust or fiduciary duty Blacklidge alleges here.

In *Wehle v. Bradley*, 195 So. 3d 928, 943 (Ala. 2015), the Alabama Supreme Court rejected, as insufficient under § 19-3B-706(b)(1) or (3), an argument by trust beneficiaries that a co-trustee's "presence . . . is no longer desired or needed and adds no value to the management of the family trust": "[e]ven if those allegations were true, they do not establish that [the co-trustee] committed a serious breach of trust, that he was unfit to serve as a cotrustee, that he was unwilling to serve as a cotrustee, or that he had persistently failed to administer the trust effectively." *Id.* at 943. In contrast, Blacklidge does not rely solely upon her personal desire to remove Anderson as Trustee. As discussed, she describes Anderson's alleged breaches of trust, breaches of fiduciary duty, mismanagement of the Trusts, and self-dealing.

Regarding Blacklidge's request to terminate the Trust, Alabama law permits termination of a noncharitable, irrevocable trust[14] "upon consent of all of the

---

[14] Blacklidge's Trusts fall under this category. There exists no suggestion the Trusts served a charitable purpose, and even if Charles Anderson originally reserved the right to revoke the Trusts during his life, his death rendered the Trusts irrevocable. *See United States v. Gordon*, 406 F.2d 332, 337 (5th Cir. 1969) ("When Martin Wright died on April 12, 1947, the trust became irrevocable . . . ."); *Comm'r v. Chase Manhattan Bank*, 259 F.2d 231, 246-47 (5th Cir. 1958) ("Daniel held the power of revocation as agent or manager of the community. When he died without having exercised that power, the insurance became payable and the trust became irrevocable."); *Lucas v. Acheson*, No. 2:14-CV-0856-SLB, 2015 WL 685638, at *1 n.2 (N.D. Ala. Feb. 18, 2015) ("The court notes that, upon the death of Thomas M. Acheson the Revocable Trust became irrevocable."). *See Bonner City of Prichard*, 661 F.2d 1206, 1209

beneficiaries if the court concludes that continuance of the trust is not necessary to achieve any material purpose of the trust," and it permits modification of such a trust "upon consent of all of the beneficiaries if the court concludes that modification is not inconsistent with a material purpose of the trust." Ala. Code § 19-3B-411(b).  As discussed previously, Blacklidge constitutes the only beneficiary of Laura's Trust, and she alleges Anderson purchased other beneficiaries' interests in AFT One, LLC, indicating she may constitute the sole remaining beneficiary of the Grandchildren's Trust.  (*See* Doc. 26, at 28 ("From the information known to Blacklidge, she is the only beneficiary of her Trust, and she consents to the termination of it.")).

However, even if other beneficiaries remained, Alabama law permits termination of a trust without all beneficiaries' consent if "the court is satisfied that:  (1) if all of the beneficiaries had consented, the trust could have been modified or terminated under this section; and (2) the interests of a beneficiary who does not consent will be adequately protected."  Ala. Code § 19-3B-411(e).  Blacklidge has plausibly alleged the terms of the Trusts warrant termination as she has reached age 35, and the court could only partially terminate the trust and fashion a remedy to protect the interests of any additional beneficiaries.  *See* RESTATEMENT (THIRD) OF TRUSTS §65 cmt. c (A.L.I. 2007)

---

(11th Cir. 1981) (*en banc*) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

("Where consent of all beneficiaries cannot be obtained, the other beneficiaries cannot compel termination or modification under this Section. Even in such a case, however, if the court is satisfied that the best interests of the beneficiaries as a whole would be served by a proposed termination or modification and if continuation of the trust is not required by Subsection (2), a court may order a partial termination of the trust (or other arrangement that might involve bonding, insurance, or impounding of some trust property) in a manner that will not prejudice the interests of nonconsenting beneficiaries."); *see also* Ala. Code § 19-3B-410 ("In addition to the methods of termination prescribed by Sections 19-3B-411 through 19-3B-414, a trust terminates to the extent the trust is revoked or expires pursuant to its terms, no purpose of the trust remains to be achieved, or the purposes of the trust have become unlawful, contrary to public policy, or impossible to achieve.").

Accordingly, Blacklidge has stated a viable cause of action for Removal of Trustee and Termination of Trust in Count Five of the Second Amended Complaint.

## CONCLUSION AND ORDER

In accordance with the foregoing analyses, Blacklidge's Second Amended Complaint does not constitute an impermissible shotgun pleading, and it does not contain inconsistent allegations that warrant dismissal. In addition, Counts One through Five of the Second Amended Complaint state viable claims for relief. Accordingly, the court **DENIES** Anderson's motion to dismiss.

39

**DONE** and **ORDERED** this 20th day of August, 2025.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE